# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Edward D. Jones & Co., LP, *a Missouri limited partnership*, | Civil Action No. 1:19-cv-00018-JMC |
| Plaintiff in Interpleader, | |
| v. | **ORDER** |
| American National Insurance Company, *a Texas corporation*; Transamerica Premier Life Insurance Company, *an Iowa corporation*; Leslie Gorman, *a South Carolina individual*; Teressa Gorman, *a South Carolina individual*; Chris McNally, *a South Carolina individual*; John Does 1-50, Tommy Sherlock, *third-party defendant*. | |
| Defendants. | |
| American National Insurance Company, *a Texas corporation*, | |
| Cross-Claimant, | |
| v. | |
| Leslie Gorman, *a South Carolina individual*, | |
| Cross-Defendant. | |
| Leslie Gorman, *a South Carolina individual*; Teressa Gorman, *a South Carolina individual*; Chris McNally, *a South Carolina individual*; | |
| Cross-Claimants, | |
| v. | |
| American National Insurance Company, *a Texas corporation*; John Does 1-50; Transamerica Premier Life Insurance Company, *an Iowa corporation*, | |

1

| | )|
|---|---|
| Cross-Defendants. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |
| Leslie Gorman, *a South Carolina individual*; | ) |
| Teressa Gorman, *a South Carolina individual*; | ) |
| Chris McNally, *a South Carolina individual*; | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| Edward D. Jones & Co., LP, | ) |
| *a Missouri limited partnership*, | ) |
| | ) |
| Counter-Defendant, | ) |
| | ) |
| American National Insurance Company, *a Texas corporation*, | ) |
| | ) |
| Third-Party Plaintiff. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

On January 2, 2019, Plaintiff Edward D. Jones & Co., LP, ("Edward Jones") filed a Complaint for Interpleader against the above-captioned Defendants. (ECF No. 1.) The matter before the court is Edward Jones' Motion to Dismiss and Compel Arbitration as to Defendants Leslie Gorman, Teressa Gorman, and Chris McNally's Counterclaims (ECF No. 33).

## I. JURISDICTION

Edward Jones claims that "subject matter jurisdiction exists . . . because the Complaint is [an] Interpleader [,] Edward Jones has in its custody or possession property of the value or amount of $500 or more, and two or more adverse claimants named as defendants are . . . of adverse citizenship." (*Id.* at 3 ¶ 9 (citing 28 U.S.C. §§ 1335, 1332 (2005)).) Section 1335 provides:

> The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
>
> (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C.A. § 1335.

Diversity jurisdiction requires complete diversity of parties and an amount in controversy in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. Section 1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978). The court has diversity jurisdiction over this case because Edward Jones has sufficiently pleaded that it and the above-captioned Defendants are citizens of different states[1] and that the amount in controversy exceeds $75,000. (*See* ECF No. 1 at 6 ¶ 27 ("Edward Jones continues to hold . . . 342,762.00").)

## II. FACTUAL AND PROCEDURAL BACKGROUND

Edward Jones, a financial services firm, claims that it is in possession of $342,762.00 to which each Defendant has declared an interest. (*Id.* at 2.) Edward Jones alleges that Defendants

---

[1] "Upon information and belief, [Defendant American National] is a corporation organized under the laws of the State of Texas . . . [Defendant Transamerica] is a corporation organized under the laws of the State of Iowa . . . Defendant Leslie Gorman is an individual and a citizen of North Augusta, South Carolina . . . Defendant Teressa Gorman is an individual and citizen of North Augusta, South Carolina . . . Defendant Chris McNally is an individual and citizen of North Augusta, South Carolina . . ." (ECF No. 1 at 2-3 ¶¶ 2-8.)

American National Insurance Company ("American National") and Transamerica Premier Life Insurance Company ("Transamerica") issued life insurance policies naming its clients, Defendants Leslie Gorman, Teressa Gorman, and Chris McNally (the "Gorman Defendants"), as beneficiaries. (*Id.* at 4.) Specifically, Edward Jones alleges the following transactions occurred:

1. In March 2017, American National issued a check on a policy payable to Defendant Leslie Gorman in the amount of $149,588.75, which she deposited into her account at Edward Jones;

2. In June 2017, Defendant Leslie Gorman transferred $28,000.00 from her account to an account held by Defendant Teressa Gorman;

3. In August 2018, Defendant Transamerica issued four death benefits checks totaling $85,008.59 payable to Defendants Leslie Gorman and Chris McNally;

4. In November 2018, Defendants Chris McNally and Teressa Gorman, acting with power of attorney for Defendant Leslie Gorman, deposited the $85,008.59 into their Edward Jones accounts;

5. In November 2018, Defendant Teressa Gorman, acting with power of attorney for Defendant Leslie Gorman, deposited a Bank of America cashier's check in the amount of $106,759.91, into an Edward Jones account.

(*Id.* at 4-5.)

Edward Jones further alleges that after Defendant Chris McNally failed a Customer Identification Program ("CIP") screening on November 13, 2018, "Defendants Chris [McNally] and Teressa [Gorman] have continued to contact Edward Jones, sometimes multiple times a day, requesting that the [f]unds be returned to them." (*Id.* at 5.) Edward Jones is "a financial services firm that serves individuals throughout the United States." (ECF No. 33 at 2.) As such, they are subject to the Currency and Foreign Transactions Reporting Act, also known as the "Bank Secrecy Act" ("BSA"), 31 U.S.C. § 5311 *et. seq.*, (2001), which includes implementing a CIP that all banks must incorporate to follow the BSA. "The CIP is intended to enable the bank to form a reasonable belief that it knows the true identity of each customer." *See* 2014 Bank Secrecy Act/Anti-Money

4

Laundering Examination Manual (2014). In short, federal law requires that Edward Jones retain "certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C. § 5311.[2]

Upon learning that Defendant Leslie Gorman pled guilty to a charge of conspiracy to violate the Racketeering Influenced and Corrupt Organizations ("RICO") Act, Edward Jones contacted American National regarding the authenticity of the check. (*Id.*) Edward Jones claims that Defendant American National determined that the check may have been issued to Defendant Leslie Gorman as a result of fraud and requested that Edward Jones hold the funds she deposited into her account. (*Id.*) Edward Jones also claims that it contacted Transamerica regarding the authenticity of the four checks issued to Defendants Leslie Gorman and Chris McNally, to which Transamerica has made a similar request to withhold funds related to the four checks. (*Id.* at 6.) Moreover, Edward Jones asserts that the $106,759.91 Bank of America cashier's check "may have been obtained from the John Does Defendants 1-50 through fraud or other criminal activity." (*Id.*)

On April 2, 2019, the Gorman Defendants filed a counterclaim against Edward Jones seeking the return of the withheld funds. (ECF No. 21 at 13.) On July 22, 2019, Edward Jones filed motion seeking to compel arbitration of the Gorman Defendants counterclaims. (ECF No. 33.)

### III. LEGAL STANDARDS

A. <u>Motion to Compel Arbitration</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "governs the rights and

---

[2] "The purpose of the BSA, aside from making money laundering more difficult to propagate, is to prevent banks from becoming unknowing intermediaries in illicit activity." *Id.* "The BSA is sometimes referred to as an anti-money laundering law (AML) or jointly as BSA/AML." *Id.*; *see also Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n*, No. 3:16-CV-02621-JMC, 2019 WL 2566950, at *4 n. 9 (D.S.C. June 21, 2019).

responsibilities of the parties with respect to an arbitration agreement." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "Under the [FAA], a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). The FAA reflects "a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to this liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citation omitted). Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

"A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). The FAA reflects a liberal federal policy favoring arbitration, but federal courts have

6

the authority to evaluate the validity of arbitration agreements. *See Moses*, 460 U.S. at 24; *Prima Paint*, 388 U.S. at 403-04.

B. <u>Missouri Arbitration Agreements</u>

Edward Jones contends that "the Account Agreement is governed by the laws of the State of Missouri." (ECF No. 33 at 4.) To prove a right to arbitration, a party must show: (1) knowledge of an existing right to arbitration; (2) acts inconsistent with that right; and (3) the inconsistent acts are prejudicial. *See Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991) (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *Nesslage v. York Sec., Inc.*, 823 F.2d 231, 234 (8th Cir. 1987)). When considering these factors, a court will "resolve in favor of arbitration 'any doubts concerning . . . [the] allegation of waiver.'" *Phillips v. Merrill Lynch, Pierce, Fenner & Smith*, 795 F.2d 1393, 1397 n. 9 (8th Cir. 1986) (quoting *Moses*, 460 U.S. at 24–25; *see also Nesslage*, 823 F.2d at 234). Whether inconsistent actions constitute prejudice is determined on a case-by-case basis. *See Prudential–Bache Sec. v. Stevenson*, 706 F. Supp. 533, 536 (S.D. Tex. 1989). Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, *id*. at 535, or litigation of substantial issues going to the merits, *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). Additionally, a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of intent to arbitrate. *See Prudential–Bache*, 706 F. Supp. at 535. However, delay in seeking to compel arbitration does not itself constitute prejudice. *See Freeman*, 924 F.2d at 159 (citing *Rush*, 779 F.2d at 887).

The FAA and the Uniform Arbitration Act express the desire to enforce arbitration agreements as a matter of law to further the important public policy of resolving disputes without resort to the courts. *McCarney v. Nearing, Staats, Prelogar & Jones*, 866 S.W.2d 881, 887 (Mo.

7

Ct. App. 1993) (citing *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 258 (Mo. App. 1985). Under both the FAA and the Missouri Uniform Arbitration Act, a written agreement to submit a present or future dispute to arbitration is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. The public policy favoring arbitration is so strong that once an agreement to arbitrate is proven, the arbitration clause will be construed in favor of arbitration unless the clause positively cannot be interpreted to cover the asserted dispute. *Id.* (citing *Bodine*, 685 S.W.2d at 259).

## IV. ANALYSIS

A. <u>The Agreement</u>

The parties agreed to an "Account Authorization" that provides: "[b]y signing below [] I acknowledge that I have received, read and understand the Edward Jones Account Agreement and agree to its terms, and have received the Schedule of Fees, Margin Disclosure Statement and Statement of Credit Terms, Privacy Notice and Revenue Sharing Disclosure." (ECF No. 33-2; 33-3; 33-4.)

Under "Terms and Conditions," the Agreement stipulates: "I represent that I have read and understand the Agreement and agree to be bound by its terms as well as the separate disclosures and notices referenced in and/or provided with this Agreement." (ECF No. 33-5 at 3.)

Section I, the "Identity Verification" states:

(a.) I understand that federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account . . . I (in my individual or representative capacity) authorize Edward Jones to obtain consumer credit reports and other information, as necessary, *to determine whether to establish my account or, after the account is opened, whether to maintain that account or decline, restrict or discontinue certain services.* Edward Jones will, upon written request made by me within a reasonable time, furnish the names and addresses of any of the consumer credit reporting agencies from which Edward Jones obtained any consumer credit reports.

8

(*Id.* (emphasis added).)

Under Section VI, "Other Important Contract Terms," the Agreement states:

(g.) Edward Jones' Conduct Not to Constitute Waiver. Edward Jones' failure to insist at any time upon strict compliance with this Agreement or with any of its terms or any continued course of such conduct on Edward Jones' part shall not constitute or be considered a waiver by Edward Jones of any of its rights hereunder.

(h.) Governing Law. Except to the extent preempted by federal law, I agree that this Agreement and all amendments to this Agreement, their validity, effect, construction, administration and application, and the parties' respective rights and duties, shall be governed by the laws of the State of Missouri without giving effect to any contrary choice of law or conflict of laws provisions.

(ECF No. 33-5 at 5.)

Section VII "Arbitration Agreement" contains the following relevant provisions:

(a.) This Agreement contains a pre-dispute arbitration clause. By signing the Account Authorization and Agreement Form, I agree as follows:

(1.) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(7.) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement . . . Any controversy arising out of or relating to any of my account(s) from its inception, business, transactions or relationships I have now, had in the past or may in the future have with Edward Jones, its current and/or former officers, directors, partners, agents, affiliates and/or employees, this Agreement, or to the breach thereof, or transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations shall be settled by arbitration in accordance with the FINRA Code of Arbitration Procedure rules then in effect.

(ECF No. 33-5 at 6.)

B. <u>The Court's Review</u>

Here, the Gorman Defendants entered into separate "Individual Account and Agreement" contracts with Edward Jones. (ECF Nos. 33, 33-1 ¶¶ 4-7; 33-2; 33-3; 33-4.). The court finds that there is a sufficient basis to grant Edward Jones' Motion to Compel Arbitration because: (1) there

9

is a dispute between Edward Jones and the Gorman Defendants; (2) there is a valid arbitration clause in a written agreement enforceable under the FAA and Missouri law purporting to cover the dispute between the parties[3] (*See* ECF No. 33-5 at 6); (3) the Gorman Defendants' accounts with Edward Jones involve interstate commerce; and (4) the Gorman Defendants refuse to arbitrate this dispute. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87. The court finds that Edward Jones has not waived its contractual right to arbitration and that the Gorman Defendants have not suffered prejudice with respect to Edward Jones' decision to pursue litigation. *See Stevenson*, 706 F. Supp. 536. Moreover, while Edward Jones has invoked the judicial process and there has been some litigation, no significant issues have been litigated and the limited discovery conducted so far, if any, will be beneficial in arbitration. *See Rush*, 779 F.2d 887. Absent any doubts concerning the Agreement, the issues between Edward Jones and the Gorman Defendants should be resolved in arbitration. *See Mercury Constr. Corp.*, 460 U.S. at 24-25.

## V. CONCLUSION

For the reasons above, the court **GRANTS** Edward Jones D. Jones & Co., LP's Motion to Dismiss and Compel Arbitration as to Defendants Leslie Gorman, Teressa Gorman, and Chris McNally's Counterclaims (ECF No. 33).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 10, 2019
Columbia, South Carolina

---

[3] In the hearing held on October 22, 2019, Defendant Chris McNally alleged that a missing page in the Account Agreement renders it unenforceable. (ECF No. 64.) The court finds that this concern is also within the scope of the arbitration clause.